## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| KEITH WILLIAM CONNOR, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT   1:15-cv-08601 |
| JP MORGAN CHASE BANK, N.A., and EQUIFAX INFORMATION SERVICES | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, KEITH WILLIAM CONNOR (hereinafter "Plaintiff"), by and through his attorneys, SULAIMAN LAW GROUP, Ltd., complaining of the Defendants, JP MORGAN CHASE BANK, N.A. ("Chase"), and EQUIFAX INFORMATION SERVICES, INC. ("Equifax") (collectively "Defendants") as follows:

### NATURE OF THE ACTION

1.  Plaintiff brings this action seeking actual, statutory, and punitive damages, attorney fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 and violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §524 and §105.

### JURISDICTION AND VENUE

2.  Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337, as the action arises under the laws of the United States.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Plaintiff resides in this District and Defendants' conduct harmed Plaintiff in this District.

1

**PARTIES**

4.   Plaintiff is a consumer and natural person over 18-years-of-age who at all times relevant owned and resided at the property located at 2210 Cherry Ridge Drive Plainfield, Illinois 60586 ("subject property").

5.   Defendant Chase is a National Banking Association organized under the laws of the United States with its principal place of business at 270 Park Avenue, New York, New York. Chase is a foreign company, a creditor, lender, debt collector, furnisher of credit information, and servicer of mortgage loans across the country, including the State of Illinois. Chase is a furnisher of information to the major credit reporting agencies, including Equifax.

6.   Defendant Equifax is a Delaware corporation with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

**BANKRUPTCY CASE**

7.   In May 2005, Plaintiff executed a mortgage and note in the amount of $231,700.00 ("subject loan" or "subject debt") in favor of Chase secured by the subject property.

8.   On December 26, 2013, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-48984 ("bankruptcy").

9.    Schedule D of the bankruptcy petition listed the subject loan as a debt secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

10.  Also on December 26, 2013, Plaintiff filed his Chapter 13 plan ("Original Plan"). *See* Exhibit B, a true and correct copy of Plaintiff's Original Plan.

2

11. Plaintiff's Original Plan proposed to treat Chase's claim as follows:

> "Debtor is surrendering the real property located at 2210 Cherry Ridge Drive, Plainfield, Illinois to JPMorgan Chase in full satisfaction of its claims." *Id.* at p. 5.

12. On December 29, 2013, by virtue of listing Chase as a creditor, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit C, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan upon Chase and Equifax.

13. On January 17, 2014, Chase, through its counsel Manley Deas Kochalski LLC., filed an Entry of Appearance and Request for All Notices in Plaintiff's bankruptcy case. *See* Exhibit D, a true and correct copy of Chase's Entry of Appearance and Request for All Notices filed in Plaintiff's bankruptcy .

14. On February 10, 2014, the Plaintiff filed his modified Chapter 13 Plan ("Modified Plan"). *See* Exhibit E, a true and correct copy of the Plaintiff's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon Chase and Equifax.

15. Plaintiff's Modified Plan proposed to treat Chase's claim as follows:

> "Debtor is surrendering the real property located at 2210 Cherry Ridge Drive, Plainfield, Illinois to JPMorgan Chase in full satisfaction of its claims." *Id.* at p. 5.

16. At no time did Chase file a proof of claim for the subject debt in Plaintiff's bankruptcy case.

17. On August 9, 2013, Plaintiff's Modified Plan was confirmed by the Honorable Jacqueline P. Cox. *See* Exhibit F, a true and correct copy of the Confirmation Order.

18. Plaintiff fully performed his duties as set forth in his confirmed Chapter 13 Plan.

19. On August 12, 2014, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case, discharging all dischargeable debts, including the subject loan. *See* Exhibit G, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Chase and Equifax.

20. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

21. On August 14, 2014, the BNC served Chase and Equifax with the Order of Discharge. *Id.*

22. Pursuant to 11 U.S.C. § 524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject debt by Chase or any other party.

23. On September 17, 2014, Plaintiff's bankruptcy case closed.

24. Plaintiff's personal liability on the subject loan was extinguished via his bankruptcy discharge, thus dissolving and terminating the business relationship with Chase.[1]

**CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX**

25. In the Aftermath of Plaintiff's bankruptcy discharge, Plaintiff pulled his Equifax credit report.

26. Plaintiff's Equifax credit report revealed that Chase was reporting the subject loan in default and with a high balance. The reporting was inaccurate because the subject loan was

---

[1] Pursuant to the Plaintiff's Chapter 13 Plan, no payments were to be made to Chase or any of its successors or assignees as the Plaintiff's Confirmed Plan surrenders the subject property to Chase in full satisfaction of its secured claim.

discharged in his bankruptcy and should be reported with a zero balance, without a negative payment history, or other derogatory status.

### a. Plaintiff's First Dispute Letter to Equifax[2]

27. On March 24, 2015, after the subject debt to Chase was discharged, Plaintiff sent a credit dispute letter ("first dispute letter") to Equifax, requesting that his credit file be updated to reflect the zero balance and discharged status of all accounts discharged in his Chapter 13 bankruptcy. Plaintiff attached the relevant bankruptcy documents to his dispute. *See* Exhibit H, a true and correct copy of Plaintiff's first dispute letter to Equifax.[3]

28. Among other things, Plaintiff's first dispute letter to Equifax stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor;"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee;"
   c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System with respect to this written notice, regarding each creditor listed on the attached Schedules D, E, and F;"
   d. "In addition, it is my understanding that each of the above creditors is required to investigate my disputes upon receipt of notification from you of this information;" and
   e. "I request that you forward this letter, and the enclosures, to each of the creditors listed in my schedules." *Id.*

29. Plaintiff sent his first dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

30. Upon information and belief, Chase received notice of Plaintiff's credit dispute and enclosures from Equifax, within 5 days of Equifax receiving Plaintiff's dispute letter.

---

[2] After Plaintiff sent his first dispute letter to Experian, Experian updated the Chase mortgage trade line to show "Discharged through Bankruptcy Chapter 13," a $0 "Recent Balance," and a $0 "Scheduled Payment Amount," as it was required to do under the FCRA.
[3] After Plaintiff sent his first dispute letter to Trans Union, Trans Union deleted the Chase mortgage trade line as it was required to do under the FCRA.

**b. Equifax's Response to Plaintiff's First Dispute Letter**

31. On April 3, 2015, Equifax responded to Plaintiff's first dispute letter stating that it had updated the trade line to show included in bankruptcy. *See* Exhibit I, a true and correct copy of the results of Plaintiff's first dispute letter to Equifax.

32. Despite its representation, the trade line for the Chase account was still reporting a "Scheduled Payment Amount" of $1,593.00, and a "Actual Payment Amount" of $1,592.00. *Id.* at p. 5.

33. The reporting of the Chase account was inaccurate as Plaintiff was no longer liable on the subject debt. Reporting a "Scheduled Payment Amount," and a "Actual Payment Amount" falsely implies that Plaintiff is delinquent and still liable for the subject loan.

**c. Plaintiff's Second Dispute Letter to Equifax**

34. On May 19, 2015, Plaintiff sent a second dispute letter to Equifax, again disputing Chase's trade line [**Account # - \*465158513**]. *See* Exhibit J, a true and correct copy of Plaintiff's second dispute letter to Equifax.

35. Among other things, Plaintiff's second dispute letter stated the following:

    a. "I am enclosing a copy of the Order Discharging Debtor entered on August 12, 2014 in my CHAPTER 13 Case;"

    b. "Please update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee;"

    c. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to this written notice, regarding each creditor listed on the attached Schedules D, E and F;"

    d. "Specifically, I am requesting an investigation into the following account: **Chase account # XXXX8513**;"

    e. This account was discharged in chapter 13 bankruptcy plan that allowed me to surrender the property with full satisfaction of the debt;" and

    f. "I request that you forward this letter, and the enclosures, to each of the creditors listed above." *Id.* at p. 2.

36. Plaintiff sent his second dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

37. Upon information and belief, Chase received notice from Equifax of Plaintiff's credit dispute and enclosures within 5 days of Equifax receiving Plaintiff's second dispute letter.

### d. Equifax's Response to Plaintiff's Second Dispute Letter

38. On June 10, 2015, Equifax responded to Plaintiff's second dispute letter stating that it has updated the trade lines to show that the Chase account was included in bankruptcy. *See* Exhibit K, a true and correct copy of the results of Plaintiff's second dispute letter to Equifax.

39. Despite its representation that the account was updated to reflect the bankruptcy, Equifax and Chase were still inaccurately reporting a "Scheduled Payment Amount" of $1,593.00 and an "Actual Payment Amount" of $1,592.00 on the subject loan. *Id.* at p. 2.

40. The reporting of the Chase trade line was still inaccurate because the Plaintiff was no longer liable on the subject loan. Reporting a "Scheduled Payment Amount," and an "Actual Payment Amount" inaccurately implies that the Plaintiff is delinquent and owes the monthly amount.

41. As of today, Equifax has yet to update the Chase account trade line to accurately reflect the scheduled payment amounts of the subject debt.

### IMPACT OF CONTINUING
### INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

42. Plaintiff is left to question how he is supposed to prove to others that the Chase entry is incorrect as reported, and why Chase and Equifax are allowed to get away with skirting their obligations under federal law.

43. The entire experience has imposed upon Plaintiff significant distrust, frustration and distress, and has rendered Plaintiff hopeless about his ability to regain his good name and the credit rating that he deserves and has worked hard to earn.

44. Due to the high balance of the subject debt, the inaccurate reporting of the Chase mortgage account had significant adverse effects on Plaintiff's credit rating and his ability to obtain financing; it appears from Plaintiff's credit report that the subject debt is currently due and owing, when in fact it was discharged and Plaintiff has no obligation to Chase.

45. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein including specifically the loss of credit, the loss of the ability to purchase and benefit from a line of credit, the loss of time and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, and monitoring his credit files, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit card denials.

46. Ultimately, Plaintiff has desired to take advantage of credit opportunities, most notably, a line of credit, but has been denied because of Chase's and Equifax's failure to report only accurate information about the Plaintiff. The credit decision was based in whole or in part on information obtained in a report from Equifax. *See* Exhibit L, a true and correct copy of a letter denying Plaintiff the extension of credit.

47. Given that Plaintiff's other trade lines were corrected with Equifax and across the other credit reporting agencies (which corrected the Chase trade line), the inaccurate reporting of the Chase trade line on the Equifax report was the cause of Plaintiff's denial of credit.

48. In light of what has transpired, Plaintiff has justifiably avoided applying for additional credit until the inaccurate information is ultimately corrected on his credit report.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST CHASE)

49. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

50. Plaintiff is a consumer as defined by 15 U.S.C. §§1681a(c) and (b).

51. Plaintiff is a "person" as defined by 15 U.S.C. §1681a(b).

52. Chase is a "furnisher of information" as defined by 15 U.S.C. §1681s-2.

53. Chase violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from Equifax and Plaintiff.

54. Chase violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff and Equifax.

55. Had Chase reviewed the information provided by Plaintiff and Equifax, it would have corrected the inaccurate designation of the subject loan to Equifax; instead Chase wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

56. Chase violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's file.

57. Chase violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax.

58. Chase violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loan.

59. Chase violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation of its reporting of the subject loan, record that the information was disputed, or delete the

9

inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax and Plaintiff.

60. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, Chase did not correct the errors or trade lines to report accurately and completely. Instead, Chase wrongfully furnished and re-furnished false and erroneous information that the subject loan was delinquent and owing.

61. A reasonable investigation by Chase would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on the Plaintiff's credit files.

62. Had Chase taken steps to investigate the Plaintiff's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in his requests for investigation. Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

63. By deviating from the standards established by the banking industry and the FCRA, Chase acted with reckless and wanton disregard for its duty as a furnisher to report accurate and complete consumer credit information to both Equifax and Plaintiff directly.

64. As a result of the conduct, actions, and inactions of Chase, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

WHEREFORE, Plaintiff KEITH WILLIAM CONNOR requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;

b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

65. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

66. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

67. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

68. Plaintiff provided Equifax with all relevant information and documentation in his requests for investigation and reinvestigation to reflect that he obtained a discharge and is no longer liable for the subject loan.

69. Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loan as outstanding and in default when in fact he had received a bankruptcy discharge and was no longer liable on the subject loan.

70.   A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had filed bankruptcy and was longer liable on the subject loan from the time of his bankruptcy filing in December 2013.

71. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and maintained regarding the Plaintiff.

72.   Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

73.   Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that subject loan was in fact discharged in bankruptcy.

74.   Instead, Equifax sent the Plaintiff multiple correspondences stating it had updated its records to reflect the Plaintiff's bankruptcy discharge while it continued to willfully report the inaccurate information.

75.   Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Chase with regard to the subject loan.

76.   Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

77. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Chase that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull his credit multiple times, only to find that the inaccurate reporting remained. The multiple

necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit scores.

78.    Since *all* of Plaintiff's other accounts were reported as "$0 balance owed," "included in bankruptcy," or "discharged," with no scheduled payment amount owing, Equifax should have investigated why the Chase trade line still reported a "scheduled payment amount," and an "actual payment amount."

79.    Moreover, after Plaintiff's written disputes, Equifax had specific information related to Plaintiff's bankruptcy case and discharge order, which included the subject loan. Equifax was also listed in Plaintiff's bankruptcy for noticing purposes.

80.    Equifax knew or should have known that the inaccurate designation of the subject loan on Plaintiff's credit report under the Chase trade line was no longer due after his bankruptcy discharge and that it would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

81.    The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

82.    By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

83.    It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify that such information is accurate.

84. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of their conduct in maintaining Plaintiff's credit files and reporting Plaintiff's credit information.

85. Equifax acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually delinquent, in default, and owing a scheduled payment amount on the Chase account after being discharged in bankruptcy.

86. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his disputes, monitoring his credit file, and the mental and emotional pain and suffering, anguish, humiliation, and embarrassment of constant credit denials.

87. Equifax's noncompliance was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff KEITH WILLIAM CONNOR requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III- VIOLATION OF THE DISCHARGE INJUNCTION
### (AGAINST CHASE)

88. Plaintiff restates and realleges paragraphs 1 through 48 as though fully set forth herein.

**a.** Section **11 U.S.C. §524(a)(2)**

89. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

90. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

91. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

92. Furthermore, "[c]orporations can be liable for punitive damages because of acts of their agents if the corporation authorized the doing and the manner of the act of its agent." *Id.* at 230.

**b. Chase's Conduct was Perpetual, Willful, and Wanton**

93. Chase had knowledge of the Order of Discharge and discharge injunction through multiple notices from the BNC, the public record, and from Plaintiff directly. *See* Exhibits A through G.

15

94.     Despite having actual knowledge of the Order of Discharge, Chase committed multiple egregious violations of Plaintiff's discharge injunction by failing to cease collection efforts as evidenced by the constant inaccurate credit reporting.

95.     Chase violated the Order of Discharge by willfully attempting to collect the subject debt with actual notice of Plaintiff's bankruptcy and the discharged status of the subject debt.

96.     Chase should have implemented procedures and trained its employees to both discourage and prevent willful and wanton violations of the Bankruptcy Code.

97.     Chase's conduct demonstrates that it has no such system in place to protect the rights of innocent consumers under the protection of the Bankruptcy Code.

98.     Based on the broad language of the Bankruptcy Code, Chase willfully and perpetually sought to collect a debt from the Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

99.     Plaintiff is entitled to actual damages, attorney's fees, and costs for Chase's willful violations of the discharge injunction. The Plaintiff is also entitled to punitive damages for Chase's arrogant defiance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter Chase from future misconduct.

WHEREFORE, Plaintiff KEITH WILLIAM CONNOR requests that this Honorable Court:

a.  Hold Chase in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b.  Order Chase to pay Plaintiff for his actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c.  Order Chase to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d.  Order Chase to pay Plaintiff his reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e.  Provide such other and further relief as the Court may deem just and proper.

**Plaintiff demands trial by jury.**

**Dated**: September 29, 2015                **Respectfully Submitted,**

<u>/s/ **Majdi Y. Hijazin**</u>, *Of Counsel*

Majdi Y. Hijazin, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188
mhijazin@hijazinlaw.com